IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Ezra L Brown and Rebecca S. Brown,
    Plaintiffs,

vs.                                       Case No. 12-4048-JTM

Landmark National Bank,
    Defendant.

MEMORANDUM AND ORDER

As a part of the financing for their purchase of a new home, plaintiffs Ezra and Rebecca Brown received a disclosure statement from defendant Landmark National Bank on August 29, 2011. This statement, issued under the federal Truth in Lending Act (TILA), indicated the annual percentage rate of the loan, the loan finance charge, the amount financed, and the total loan payments. The TILA statement also provided: "This loan transaction requires the following insurance," followed by a series of check boxes. The box for Hazard Insurance was checked, but not the box for Flood Insurance.

A few weeks later, Landmark sold the loan to another company, Branch Banking & Trust, which informed the Browns that their property was in a Special Flood Hazard Area, and would require flood insurance. The Browns then brought this TILA action pursuant

to 15 U.S.C. § 1632, alleging that they were damaged by Landmark's failure to disclose the necessity for flood insurance. They do not allege that Landmark intentionally concealed the need for flood insurance, but that it "knew or should have known" of the need for flood insurance, and that it failed to do so because it did not "maintain[] procedures reasonably adopted to avoid such occurrences." (Dkt. 1, at ¶¶ 23, 30).

Landmark has moved to dismiss the action on two grounds. First, it argues that the TILA statement as to the "finance charge," as defined under TILA, was in fact accurate. It argues that liability should not be imposed under TILA, because the Act explicitly excludes liability in the event that a correct disclosure is rendered inaccurate by "any act, occurrence, or agreement subsequent to the delivery of the required disclosures." 15 U.S.C. § 1634. Second, it stresses that no private right of action exists under the National Flood Insurance Act (NFIA) against lenders who incorrectly determine that property is outside a flood insurance zone. *See Hofbauer v. Northwestern Nat'l Bank of Rochester*, 700 F.2d 1197 (8th Cir. 1983).

With respect to Landmark's first argument, that the imposition of flood insurance premiums was in fact accurate, and was rendered inaccurate only by a subsequent event under § 1634, the court will deny the motion to dismiss. Here, the flood insurance premiums were imposed only a few weeks after the loan closing. The premiums were not based on a change in the flood zone status of the plaintiff's property, and thus is not an "occurrence ... subsequent to the delivery of the required disclosures" within the meaning of TILA.

Under TILA, a "finance charge" includes premiums for insurance written in connection with the loan. *See* 15 U.S.C. § 1605(a). 12 C.F.R. § 226.4(a) defines "finance charge" as the "cost of consumer credit," which "includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." The regulation provides examples of finance charges, including "[p]remiums or other charges for any guarantee or insurance protecting the creditor against the consumer's default or other credit loss." 12 C.F.R. § 226.4(b)(5).

The court finds that the plaintiffs have presented a colorable claim that the premiums charged were imposed indirectly as an incident to the extension of credit under § 226.4(a).

12 C.F.R. § 226.4(d)(2), further, provides that insurance premiums are not finance charges if

    (I) The insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed. (A creditor may reserve the right to refuse to accept, for reasonable cause, an insurer offered by the consumer.)

    (ii) If the coverage is obtained from or through the creditor, the premium for the initial term of insurance coverage shall be disclosed. If the term of insurance is less than the term of the transaction, the term of insurance shall also be disclosed.

The defendant makes no argument here predicated on § 226.4(d)(2), and makes no suggestion in the present case of any compliance with the regulation, where the Browns allege that Branch Banking subsequently force-placed flood insurance for them, and there was no disclosure of the force placement in the original TILA statement. (Dkt. 1, at ¶ 21).

Landmark also observes that TILA permits the periodic reassessment of properties for flood insurance, and provides that such fees are not finance charges. The relevant staff commentary relates to the exclusion of certain real estate charges under § 226.4(c)(7), and in fact provides that such flood determination fees may indeed be finance charges under certain circumstances.

> *Charges assessed during the loan term.* Real estate or residential mortgage transaction charges excluded under § 226.4(c)(7) are those charges imposed solely in connection with the initial decision to grant credit. This would include, for example, a fee to search for tax liens on the property or to determine if flood insurance is required. The exclusion does not apply to fees for services to be performed periodically during the loan term, regardless of when the fee is collected. For example, **a fee for one or more determinations during the loan term of the current tax-lien status or flood-insurance requirements is a finance charge, regardless of whether the fee is imposed at closing, or when the service is performed.** If a creditor is uncertain about what portion of a fee to be paid at consummation or loan closing is related to the initial decision to grant credit, the entire fee may be treated as a finance charge.

12 C.F.R. § 226 Supp. I, Subpt. A (emphasis added).

In its Reply, Landmark argues that the plaintiffs improperly conflate the requirements of TILA and the NFIA, and stresses its supposed clean hands:

> Landmark did not impose a flood insurance requirement upon the Browns. Landmark determined at the time of the loan that the Browns' house was not located in a Special Flood Hazard Area. Landmark loaned money to the Browns without requiring them to obtain flood insurance, and Landmark did not charge the Browns for flood insurance while it owned the note and mortgage.

(Dkt. 11, at 3).

But this fails to accurately describe the plaintiffs' Complaint. The Browns allege that Landmark issued the TILA without an indication of the necessity of flood insurance. Landmark, it is alleged, then sold the loan almost immediately to a third party, which promptly notified the Browns — without any intervening change in the status of their home — that it would require the payment of a substantial flood insurance premium. At the same time, the plaintiffs allege, Landmark "declined to repurchase the mortgage because it would also require ... flood insurance." (Dkt. 1, at ¶ 20). The second lender ultimately forced placed flood insurance on the property, with premiums over the life of the loan of approximately $56,700.00. The court finds that these claims present a potential claim under TILA. *See Wulf v. Bank of America*, 798 F.Supp.2d 586, 599 n. 2 (E.D. Pa. 2011) (holding that "[i]t would be premature at this stage to conclude as a matter of law that TILA does not apply to Defendants' requirement that Plaintiff obtain more [flood] insurance, either as part of the initial loan disclosures or at the time of the increase").

The court also rejects the second rationale offered by Landmark — that it has no liability under TILA in light of its obligation under NFIA to require the Browns to purchase flood insurance during the life of the loan. As indicated earlier, Landmark relies in particular on *Hofstetter v. Chase Home Finance*, 751 F.Supp.2d 1116, 1125-26 (N.D. Cal. 2010). In that case, the plaintiff sought permission to amend to permit her to advance the claim that the defendant bank's post-closing requirement for flood insurance violated TILA.

> An important point, however, must be emphasized regarding the interplay between the disclosure requirements of the TILA and the mandatory flood insurance requirements of the NFIA. [T]he NFIA has

5

> specific notice provisions that *require* federally regulated lenders (and their affiliated servicers) to notify borrowers in writing that they *must* purchase flood insurance within a specified period of time if they lack the minimum insurance coverage required under the Act. *See* 42 U.S.C. 4012a(e)(1). The Act further authorizes these lenders to force-purchase a sufficient amount of flood insurance coverage to achieve compliance with the NFIA if a borrower fails to purchase adequate insurance. See 42 U.S.C. 4012a(e)(2). Critically, these requirements of the NFIA make no reference to the terms set forth in loan agreements between lenders and borrowers. Stated differently, even if the borrower was not required to maintain flood insurance when the loan was consummated, the NFIA would nevertheless *require* the lender to impose such a requirement and *require* a certain amount of flood insurance coverage to be placed on the property that secures the loan if the property was later found to be located in a "special flood hazard area."

751 F.Supp.2d at 1125-26 (all emphasis in original). The court concluded that "[t]o hold that a lender's compliance with the provisions of the NFIA would render it liable for 'changing terms' under the TILA (under the circumstances presented herein) would frustrate the intent and effect of these congressional acts." *Id*. at 1126. The court restricted this holding, however, in a footnote which observed:

> Or course, different analysis might apply *if the NFIA's requirement of flood insurance coverage existed at the time the loan was consummated*. This order takes no position on this issue.

*Id*. at 1126 n. 2.

That is the case here, and the court finds no conflict between TILA and NFIA under the facts of the case.

The defendant also cites to *Duong v. Allstate Insurance*, 499 F.Supp.2d 700, 703 (E.D. La. 2007) (citing *Till v. Unifirst Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 154 (5th Cir.1981), which observed that "[n]o federal cause of action exists against a home lender for failure to make

a proper flood zone determination." But *Duong* only held that such circumstances would not create a cause of action under the NFIA. The plaintiff in *Duong* advanced no TILA claim.

IT IS ACCORDING ORDERED this 8th day of November, 2012, that the defendant's Motion to Dismiss (Dkt. 9) is hereby denied.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE